Cyndie M. Chang (SBN 227542)
cmchang@duanemorris.com
**DUANE MORRIS LLP**
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Tel.: 213-689-7432
Facsimile: 213-689-7401

Jennifer Lantz (SBN 202252)
jmlantz@duanemorris.com
**DUANE MORRIS LLP**
2475 Hanover St.
Palo Alto, CA 94304
Tel.: 650-847-4150
Facsimile: 650-847-4151

Meghan C. Killian (SBN 310195)
mckillian@duanemorris.com
**DUANE MORRIS LLP**
One Market Plaza
Spear Tower, Suite 2200
San Francisco, CA 94105
Tel.: 415-957-3138
Facsimile: 415-840-0017

Tyler Marandola (*pro hac vice* forthcoming)
tmarandola@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Tel.: 215-979-1000
Facsimile: 215-979-1020

Attorneys for Plaintiff
Coastal Cocktails, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COASTAL COCKTAILS, INC. d/b/a MODERN GOURMET FOODS, a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FRANKFORD CANDY, LLC, a Delaware limited liability company,<br><br>    Defendant. | **Case No.**<br><br>**COMPLAINT FOR:**<br><br>**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK;**<br><br>**DECLARATORY JUDGMENT OF INVALIDITY OF TRADEMARK;**<br><br>**FRAUD OR FRAUDULENT REGISTRATION;**<br><br>**CANCELATION OF TRADEMARK REGISTRATION;**<br><br>**UNFAIR COMPETITION.**<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiff Coastal Cocktails, Inc., d/b/a Modern Gourmet Foods ("Coastal" or "Plaintiff"), by its undersigned attorneys, Duane Morris LLP, for its Complaint against Defendant Frankford Candy, LLC ("Defendant"), hereby alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff and Defendant both sell hot chocolate bombs. A hot chocolate bomb (sometimes called a hot cocoa bomb or a cocoa bomb) is a round hollow ball of chocolate filled with hot chocolate mix along with marshmallows or other hot chocolate add-ins. When dissolved in hot milk or water, the hot chocolate bomb "explodes," releasing its contents and (with a bit of stirring) creating a decadent cup of hot chocolate.

2. Hot chocolate bombs have become incredible popular as the treats have become a viral sensation. Kids and adults alike post videos showing their hot chocolate bombs dissolving, rating and "unboxing" different hot chocolate bombs, and providing tips to people who want to make their own hot chocolate bombs. Many of these videos appear on the popular video platform TikTok. Currently, the hashtag

(a word or phrase used to tag and search for videos or other content) #hotchocolatebombs has been used on videos that have been viewed on TikTok more than 300 million times.

3. No one can own the term hot chocolate bomb (or hot cocoa bomb, or cocoa bomb), because it is simply the name for a category of product, and is incapable of indicating any particular source. And even if that were not the case, "hot chocolate bomb" is plainly descriptive of a hollow ball used to make hot chocolate. Yet Defendant has weaponized an improvidently granted trademark registration for the word "BOMB" to suppress competition. Specifically, Defendant filed complaints with Amazon seeking the removal of Plaintiff's listings for its hot chocolate bombs, which it sells under the brand name BOMBOMBS—a play on bon bons. Amazon responded by removing all the requested listings at a devastating time for Plaintiff, just weeks before the holiday shopping season starts to pick up. And Defendant sent Plaintiff a cease and desist letter demanding that Plaintiff abandon its application to register its BOMBOMBS mark, among other applications.

4. Plaintiff therefore seeks a declaration that its use of the generic term "hot chocolate bomb" to describe its product and its BOMBOMBS mark do not infringe Defendant's BOMB mark, and that Defendant's BOMB mark is invalid as generic or descriptive.

5. Plaintiff further seeks cancelation of Defendant's BOMB registration, and damages under the Lanham Act and California unfair business practices law to remedy the harm caused by Defendant's unfair and illegal scheme.

## THE PARTIES

6. Plaintiff Coastal Cocktails, Inc. d/b/a Modern Gourmet Foods is a California corporation with its principal place of business at 18011 Mitchell St., Ste. B, Irvine, CA 92614.

7. Upon information and belief, Defendant Frankford Candy, LLC is a Delaware limited liability company with its principal place of business at 9300 Ashton Rd, Philadelphia, PA 19114.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this controversy under the Declaratory Judgment Act, 28 U.S.C. § 2201, under 28 U.S.C. §§ 1331 and 1338, and under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. A live controversy exists between Plaintiff and Defendant with respect to the validity of Defendants' BOMB mark and with respect to whether Plaintiff's use of the phrase "hot chocolate bomb" or its BOMBOMBS mark infringes.

9. This Court has personal jurisdiction over Defendant because Defendant transacts extensive business in the State of California, including selling its hot chocolate bomb product to consumers in California and this district both online on its website and through third-party seller such as Amazon, and in brick-and-mortar retailers.

10. This Court also has jurisdiction over Defendant because it has directed its improper and illegal enforcement efforts to Plaintiff, a resident of this district. On August 12, 2021, Defendant sent a cease and desist letter to Plaintiff (through Plaintiff's counsel), and Defendant specifically targeted Plaintiff's Amazon listings for removal based on its "BOMB" registration.

11. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b), because Defendant is subject to personal jurisdiction in this district due to its voluntary transacting of business herein, including offering and selling products in and to this district, because it directed its enforcement efforts to Plaintiff in this district, and because a substantial portion of the events at issue have arisen and will arise in this judicial district.

# FACTUAL BACKGROUND

### A. Hot Chocolate Bombs and Plaintiff's BomBombs Product

12. Hot chocolate is a hot beverage enjoyed by a wide range of consumers, particularly during the holiday season and when the weather is cold in much of the United States.

13. In recent times, a product called a "hot chocolate bomb" or a "hot cocoa bomb" has become an increasingly popular way to enjoy hot chocolate. A hot chocolate bomb is a hollow chocolate sphere filled with hot chocolate mix and marshmallows or other add-ins. A hot chocolate bomb dissolves in hot milk or water to make hot chocolate.

14. Hot chocolate bombs have been a recent viral sensation, including on video sharing platforms like TikTok and YouTube. Users on those platforms share videos of them making hot chocolate using hot chocolate bombs, unboxing and rating hot chocolate bombs, and demonstrating how people can make their own hot chocolate bombs. Countless of these videos refer to "hot chocolate bombs" or "hot cocoa bombs" to refer to the product itself, and not to any particular brand. The hashtage #hotchocolatebombs has been used on videos that have been viewed on TikTok more than 300 million times.

15. Countless online publications also use "hot chocolate bomb" to describe a genus of product. To take just one example, the popular website The Pioneer Woman published an article in December 2020 titled "These are the 12 Coolest Hot Chocolate Bombs You Can Buy" (www.thepioneerwoman.com/food-cooking/g35046616/hot-chocolate-bombs/). Number 1 on the list is Plaintiff's BomBombs product. Number 12 is Defendant's competing hot chocolate bomb product.

16. The extensive generic use of "hot chocolate bomb" is a specific application of the commonly-used generic term "bomb," which is used in a wide variety of contexts for a product that dissolves or is mixed into a liquid. A bath bomb

dissolves in a bath to release scents, essential oils, moisturizers, or other things into a bath. Various drink bombs make beverages, such as cocktail bombs, tea bombs, coffee bombs, and smoothie bombs.

17. Plaintiff is a global leader in creating innovative food gifts. Plaintiff has used the terms bomb, hot chocolate bomb, cocoa bomb and hot cocoa bomb since early 2019, prior to Frankford's claimed first use anywhere. Beginning in 2020,



Plaintiff began using its BOMBOMBS trademark for its hot chocolate bombs, as shown above.

18. Plaintiff sells its hot chocolate bombs throughout the United States, both online and through brick and mortar retailers. One of Plaintiff's primary sales channel is online sales through Amazon.com listings.

19. On October 26, 2020, Plaintiff filed intent-to-use trademark applications for its BOMBOMBS mark and for the mark BOMBOMBS HOT CHOCOLATE BOMBS.

20. In response to Plaintiff's application for BOMBOMBS alone, the trademark examining attorney noted that "bombs" is "a popular descriptive term for a ball of chocolate containing hot cocoa mix . . ."

21. The trademark examining attorney assigned to Plaintiff's application for BOMBOMBS HOT CHOCOLATE BOMBS issued an office action that, among

other things, required Plaintiff to disclaim any exclusive rights in the term "hot chocolate bombs." As the office action explained, "'HOT CHOCOLATE BOMBS' is the common descriptive phrase for a molded chocolate candy confection that houses hot chocolate mix and/or toppings, and is used to make a hot beverage." In the same office action, the examining attorney identified two pending applications from different applicants that could potentially create a likelihood of confusion with Plaintiff's applied-for mark if registered. Those applications sought registration of the mark COCOA BOMBS and HOT COCOA BOMBS. Both applications were later rejected for being merely descriptive.

### B. Defendant's BOMB Registration and Enforcement Actions

22. After Plaintiff filed its own applications, on November 12, 2020, Defendant filed a trademark application for the term BOMB, and described its products as "hot beverage mix; candy."

23. Defendant's BOMB application claimed a date of first use anywhere of March 8, 2019, and a date of first use in commerce of October 8, 2019.

24. As a specimen purporting to demonstrate the use of BOMB as a trademark, Defendant submitted a specimen of its hot chocolate bomb product:



25. When it filed the BOMB application, Defendant's attorney signed a declaration under oath that "[t]o the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

26. Upon information and belief, this declaration was knowingly false. On information and belief, Defendant and its counsel were well aware of the generic and descriptive nature of the term BOMB both generally and for hot chocolate bombs, and of the numerous third parties selling hot chocolate bombs. All of these users—including Plaintiff—have the right to use the word bomb in connection with their products.

27. In examining Defendant's application, the assigned examining attorney did not identify Plaintiff's previously filed application, or the applications for COCOA BOMBS or HOT COCOA BOMBS that were cited against Plaintiff's application. Nor did the examining attorney object to the applications on descriptiveness grounds.

28. On August 17, 2021, the Trademark Office issued registration number 6,453,593 to Defendant for the BOMB mark. The only change that the Trademark Office required was to the description of goods, which were clarified to "Hot chocolate beverage mix; candy." A copy of the registration certificate is attached as Exhibit A.

29. On information and belief, Defendant knew that its registration was unenforceable because of the genericness and descriptiveness of the word "bomb" and the widespread use of "hot chocolate bomb." Defendants' purpose in obtaining a registration was to suppress competition from Plaintiff and others and to use its registration to initiate takedown complaints with Amazon and other third parties retailers.

30. Defendant began its scheme shortly before its registration had issued, but after the opposition period had passed. On August 12, 2021, Defendant sent a letter to Plaintiff's counsel demanding that Plaintiff immediately withdraw certain trademark applications and also change the name of its product. A copy of Defendant's cease and desist letter is attached as Exhibit B.

31. On September 3, 2021, relying on its invalid BOMB registration, Defendant initiated a trademark complaint against Plaintiff with Amazon.com. That complaint sought removal of all of Plaintiff's hot chocolate bomb product listings on the specious ground that those listing infringed Defendant's rights in the BOMB registration.

32. Plaintiff responded to Defendant's letter on September 3, 2021. Plaintiff's letter highlighted the descriptiveness and genericness of the terms "bomb" and "hot chocolate bomb," and explained that Defendant could therefore have no enforceable trademark rights in the BOMB mark when used in connection with hot chocolate bombs. A copy of Plaintiff's response letter is attached as Exhibit C.

33. Plaintiff also demanded on September 3, 2021 that Defendant withdraw its trademark complaint with Amazon.com immediately.

34. Defendant has not responded to Plaintiff's letter or to Plaintiff's demand for withdrawal of the trademark complaint with Amazon. Nor has Defendant withdrawn the complaint.

35. Amazon responded to Defendant's trademark complaint by removing Plaintiff's product listings, thereby destroying one of Plaintiff's primary sales channels, to Defendant's benefit.

36. Plaintiff has so far been unsuccessful at restoring its Amazon listings, and they remain deactivated.

37. Upon information and belief, Defendant's trademark complaint was made in bad faith with the knowledge that it has no right to prevent its competitors from using the term bomb or hot chocolate bomb to refer to their products.

# FIRST CAUSE OF ACTION

## (Declaratory Judgment of Invalidity)

38. Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

39. Defendant has claimed that Plaintiff's Bombombs Hot Chocolate Bomb product infringes its trademark rights in the alleged mark BOMB for "hot chocolate beverage mix; candy," and has demanded that Plaintiff change its product name and abandon several trademark applications.

40. Defendant has also made a trademark complaint with Amazon seeking removal of product listings for Plaintiff's Bombombs product on the ground of alleged infringement.

41. There is an actual, present, and justiciable case and controversy between Plaintiff and Defendant concerning the validity of Defendant's registration of the alleged BOMB mark and as to any rights Defendant may claim to have in the term "hot chocolate bomb."

42. The term "bomb" is generic for a category of products that dissolve in or are mixed with a liquid. The term bomb gained that generic meaning through years of use by countless third parties in connection with a variety of products, including but not limited to hot chocolate bombs.

43. The term "hot chocolate bomb" is generic for a hollow ball of chocolate filled with hot chocolate mix along with marshmallows or other hot chocolate add-ins that, when dissolved in milk or water, makes hot chocolate.

44. The primary significance of the terms "bomb" and "hot chocolate bomb" with the consuming public are to denote a genus of goods, and not as a source identifier.

45. A generic mark cannot be registered and cannot act as a trademark.

46. In the alternative, if "bomb" and "hot chocolate bomb" are not generic terms, then they are descriptive of a product that is dissolved or mixed into a liquid and a chocolate ball dissolved in milk or water to make hot chocolate, respectively.

47. If "bomb" and/or "hot chocolate bomb" are deemed descriptive, Defendant has not shown any secondary meaning. As evidenced by the widespread third party use of "hot chocolate bomb" by both sellers and consumers, consumers do not associate the terms bomb or hot chocolate bomb with any particular source when used in connection with Defendant's product.

48. Plaintiff's alleged BOMB registration is further invalid because of non-use. Upon information and belief, Plaintiff has never used the term BOMB as a mark by itself. Rather, Plaintiff only uses the term "bomb" as part of the term "hot chocolate bomb," which is materially different than "BOMB" as depicted in Plaintiff's trademark registration.

49. Plaintiff is entitled to a declaration from this Court that Defendant's alleged trademark is invalid as generic, or as a descriptive mark that lacks secondary meaning.

50. Plaintiff is further entitled to an order directing the U.S. Patent and Trademark Office to cancel Defendant's BOMB registration (Reg. No. 6,453,593) under 15 U.S.C. § 1119.

51. Plaintiff is further entitled to an injunction directing Defendant to withdraw its trademark complaint with Amazon and to request that Amazon restore each and every one of Plaintiff's Amazon listings with the same rankings, reviews, and comments as existed before the takedown.

52. This is an exceptional case under 15 U.S.C. § 1117(a), entitling Plaintiff to its attorney's fees.

## SECOND CAUSE OF ACTION

**(Declaratory Judgment of Non-Infringement)**

53. Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

54. Defendant has claimed that Plaintiff's Bombombs Hot Chocolate Bomb product infringes its trademark rights in the alleged mark BOMB for "hot chocolate beverage mix; candy," and has demanded that Plaintiff change its product name and abandon several trademark applications.

55. Defendant has also made a trademark complaint with Amazon seeking removal of product listings for Plaintiff's Bombombs product on the ground of alleged infringement.

56. There is an actual, present, and justiciable case and controversy between Plaintiff and Defendant concerning the infringement of Defendant's alleged rights inf the alleged BOMB mark and as to any rights Defendant may claim to have in the term "hot chocolate bomb."

57. Defendant has no rights in the alleged BOMB mark, or in the term "hot chocolate bomb," because those terms are generic and/or descriptive without secondary meaning, as set forth in Plaintiff's First Cause of Action.

58. Because Defendant has no rights in those terms, Plaintiff's use of the mark BOMBOMBS and its use of the term "hot chocolate bomb" cannot cause a likelihood of confusion with respect to any legitimate rights of Defendant.

59. Moreover, there is no likelihood of confusion between Defendant's alleged BOMB mark and Plaintiff's use of the mark BOMBOMBS.

60. Additionally, even if Defendant could claim some right in the alleged BOMB mark, Plaintiff's use of the term "hot chocolate bomb" is descriptive of its own product, and is therefore a non-infringing fair use.

61. Finally, even if Defendant could claim some right in the alleged BOMB mark, Plaintiff has been using the term "hot chocolate bomb" in commerce for longer

than Defendant (whose alleged use in commerce began in October 2020), and therefore Defendant does not have priority and cannot make a claim for infringement.

62. Plaintiff is entitled to a declaration that its use of BOMBOMBS and "hot chocolate bomb" do not infringe any rights Defendant claims to have in the alleged BOMB mark or the term "hot chocolate bomb."

63. This is an exceptional case under 15 U.S.C. § 1117(a), entitling Plaintiff to its attorney's fees.

## THIRD CAUSE OF ACTION

### (False or Fraudulent Registration under 15 U.S.C. § 1120)

64. Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

65. On November 12, 2020, Defendant filed a trademark application for the mark BOMB in International Class 30 for "hot beverage mix; candy."

66. As part of the application, Defendant's attorney signed a declaration under oath that "[t]o the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

67. Upon information and belief, Defendant's attorney—and Defendant—knew this declaration to be false. In fact, countless sellers of hot chocolate bombs and third parties have used the term "bomb" to describe a chocolate ball dissolved in milk or water to make hot chocolate.

68. Defendant was aware of this extensive use of the term "bomb" in a descriptive, in indeed generic, sense.

69. Despite Defendant's knowledge of the invalidity of the alleged BOMB mark, it sought registration for it in an attempt to suppress legitimate competition by

companies like Plaintiff that sell hot chocolate bombs, and sought to do so just before the holiday season to time its scheme for maximum harm.

70. Defendant used its registration to request the removal of Plaintiff's Amazon listings for its hot chocolate bomb products, which compete with Defendant's products.

71. Defendant's trademark complaint with Amazon was successful, and Plaintiff's Amazon listings were removed.

72. Plaintiff is suffering harm each day that its Amazon listings are down, both in lost sales and to the reputation of its products in the mark.

73. Plaintiff is further entitled to an order directing the U.S. Patent and Trademark Office to cancel Defendant's BOMB registration (Reg. No. 6,453,593) under 15 U.S.C. § 1119.

74. Plaintiff is further entitled to recover damages under 15 U.S.C. § 1120 for the harm it has suffered from the wrongful removal of its Amazon listings.

75. Plaintiff is further entitled to an injunction directing Defendant to withdraw its trademark complaint with Amazon and to request that Amazon restore each and every one of Plaintiff's Amazon listings with the same rankings, reviews, and comments as existed before the takedown.

76. This is an exceptional case under 15 U.S.C. § 1117(a), entitling Plaintiff to its attorney's fees.

## FOURTH CAUSE OF ACTION

**(Unfair Trade Practices under Cal. Bus. & Prof. Code § 17200 *et. seq.*)**

77. Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

78. Defendant obtained its trademark registration for the BOMB mark by fraud and, upon information and belief, knew that it could not rightfully stop others from using the terms "bomb" and "hot chocolate bomb" to describe their hot chocolate bomb products.

14
COMPLAINT

79. Notwithstanding the clear generic and descriptive nature of "bomb" in connection with hot chocolate bombs, Defendant unfairly used its BOMB registration to file a trademark complaint with Amazon.com, and persuaded Amazon to remove Plaintiff's listings for its hot chocolate bomb products.

80. Defendant's conduct in obtaining its BOMB registration and attempting to enforce it against Plaintiff and its product listings is unlawful as well as immoral, unethical, substantially injurious to Plaintiff, and contrary to public policy.

81. Defendant's conduct also harmed consumers in California and elsewhere by depriving them of Plaintiff's hot chocolate bomb product on Amazon, and lessening lawful competition among sellers of hot chocolate bombs.

82. Plaintiff has been harmed by Defendant's conduct because it resulted in the removal of Plaintiff's product listings, and caused Plaintiff to lose the substantial revenue that sales on Amazon generate.

83. Plaintiff is suffering harm each day that its Amazon listings are down, both in lost sales and to the reputation of its products in the mark.

84. Plaintiff is entitled to an injunction directing Defendant to withdraw its trademark complaint with Amazon and to request that Amazon restore each and every one of Plaintiff's Amazon listings with the same rankings, reviews, and comments as existed before the takedown, and enjoining Defendant from further unfair competition.

85. Plaintiff is further entitled to recover damages under Cal. Bus. & Prof. Code § 17203 for the harm it has suffered from the wrongful removal of its Amazon listings.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment as follows:

1. For a declaration that Defendant's trademark registration for the BOMB mark is invalid and unenforceable;

2. for a declaration that Defendant has no trademark rights in the terms "bomb" or "hot chocolate bomb";

3. for an order directing the U.S. Patent and Trademark Office to cancel Defendant's BOMB registration (Reg. No. 6,453,593) under 15 U.S.C. § 1119.

4. for an injunction directing Defendant to withdraw its trademark complaint with Amazon and to request that Amazon restore each and every one of Plaintiff's Amazon listings with the same rankings, reviews, and comments as existed before the takedown;

5. for damages under 15 U.S.C. § 1120;

6. for damages under Cal. Bus. & Prof. Code § 17203;

7. for attorney's fees and costs;

8. for an order awarding Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury in this action on all issues so triable.

Dated: September 20, 2021        **DUANE MORRIS LLP**

By: /Jennifer M. Lantz/
Jennifer M. Lantz

Attorney for Plaintiff
Coastal Cocktails, Inc.