Meghan Rohling Kelly (CA Bar No. 292236)
Email:     mkelly@bakerlaw.com
Jacqueline M. Lesser (PA Bar No. 204622) (*pro hac vice* forthcoming)
Email:     jlesser@bakerlaw.com
Lesley McCall Grossberg (PA Bar No. 208608) (*pro hac vice* forthcoming)
Email:     lgrossberg@bakerlaw.com

BAKER & HOSTETLER LLP
2929 Arch Street
Cira Centre, 12th Floor
Philadelphia, PA  19104-2891
Telephone:  215.568.3100
Facsimile:  215.568.3439

Attorneys for Defendant
FRANKFORD CANDY, LLC

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| COASTAL COCKTAILS, INC. d/b/a/ MODERN GOURMET FOODS, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>FRANKFORD CANDY, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 8:21-cv-01548-DOC-KES<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF COASTAL COCKTAILS, INC.'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date:     TBD<br>Time:    TBD<br>Ctrm:    9D<br><br>Case Filed:   9/20/2021<br>Trial Date:   TBD |

In opposition to Plaintiff Coastal Cocktails, Inc. d/b/a Modern Gourmet Foods's ("Coastal" or "Plaintiff") application for temporary restraining order and order to show cause why a preliminary injunction should not issue (D.I. 15), served by Plaintiff's counsel via electronic mail on September 23, 2021, at 5:41 pm PDT, Defendant, Frankford Candy, LLC ("Frankford"), submits that the Court should deny the application with respect to the proposed temporary restraints and proceed to issue an order for briefing and hearing on the proposed preliminary injunction.

## I.  INTRODUCTION

This action was filed while the parties were actively engaged in discussions to resolve the dispute. Frankford had already confirmed to Coastal that it will accede to Coastal's use of the trademark BOMBOMB for hollow chocolate balls that can be melted with hot water or hot milk to create a hot cocoa beverage, notwithstanding the similarity of the BOMBOMB mark to Frankford's registered BOMB trademark. Rather than allow discussions to continue that would have likely resulted in an undertaking on Frankford's part not to further challenge Coastal's use of BOMBOMB, Coastal filed concurrent actions in this Court and the Trademark Trial and Appeal Board, challenging the validity of Frankford's BOMB trademark in both actions and seeking various injunctive and monetary relief from this Court.

The purported immediacy has been manufactured by Coastal. As it concedes, Frankford's trademark infringement complaints to Amazon.com were issued three weeks ago, on September 3, 2021. When the parties' discussions did not result in the capitulation Coastal sought, it abandoned those efforts and came to this court claiming irreparable harm from its BOMBOMB products being delisted from Amazon. The Court should decline to enter an order that would actually alter the status quo of the past three weeks and improperly burden a third party (Amazon). The merits of the claims and Coastal's likelihood of succeeding thereon can await this Court's consideration on the order to show cause why a preliminary injunction should not issue.

## II.  BACKGROUND

Founded in 1947, Frankford manufactures and distributes candy and confectionery nationwide. In early 2019, Frankford pioneered the use of a hollow sphere of chocolate filled with marshmallows as a fun and engaging way to make a hot chocolate beverage, and gave this product the name "Hot Chocolate BOMB." Frankford began selling its BOMB hollow chocolate balls in United States

- 2 -

DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPROARY RESTRAINING ORDER: CASE NO.:
8:21-CV-01548-DOC-KES

4850-0195-1228.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
PHILADELPHIA

commerce on October 8, 2019, and applied to register the BOMB trademark on November 16, 2020. The application matured to registration on August 17, 2021, covering "Hot chocolate beverage mix; candy" in class 30. Frankford has engaged in policing unauthorized uses of its BOMB mark in the marketplace.

Contrary to Coastal's arguments, Frankford's BOMB trademark is not generic, and it is disingenuous for Coastal to claim that it is not protectable as a trademark (and that Frankford committed fraud in applying to register the mark), when Coastal has itself applied to register "BOMB" marks, including MAKE HOT CHOCOLATE BOMB (U.S. App. Ser. No. 90447477); BOMBOMBS (U.S. App. Ser. No. 90279475); BOMBOMBS HOT CHOCOLATE BOMBS (U.S. App. Ser. No. 90279467); and BOMBOMS (U.S. App. Ser. No. 90279461). Moreover, Frankford's registration for the BOMB mark is not blocking Coastal's own efforts to register its BOMBOMB-formative or BOMB trademark applications. The MAKE HOT CHOCOLATE BOMB application was refused for failure to function as a trademark, and the other applications were refused registration due to a likelihood of confusion, not with Frankford's BOMB trademark, but with a third party's registration for BOM BOMS. (*See* Lesser Decl., Exs. A through H, Trademark Status & Document Retrieval (TSDR) records showing the status of each of these applications and the relevant office actions.)

Coastal also misleadingly suggests, though it is irrelevant to this action, that Coastal has priority of use of the term "bomb." (*See* D.I. 15-1 at 9:11-13, citing Frankford's trademark application for the proposition that Frankford's first use in commerce of the BOMB mark was "after Coastal began using the term 'hot chocolate bomb'".) Nothing submitted by Coastal supports this bald assertion. (*See* D.I. 15-2, Shonfeld Decl. at ¶ 5 (vaguely stating that Coastal "has been developing and promoting hot chocolate bombs" – but notably, not "selling" them – "since 2019".) By Coastal's own admission, the term "bomb" as used in connection with melting chocolate balls did not "go viral" until "late 2020."

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
PHILADELPHIA

Frankford's trademark registration for BOMB is entitled to a presumption of validity, having been examined and granted registration by the USPTO. 15 U.S.C. § 1057(b). Coastal is free to challenge and rebut that presumption, but for purposes of its *ex parte* application for temporary restraints, the Court should maintain the status quo while the parties prepare more detailed evidence and analysis.

### III. COASTAL IS NOT ENTITLED TO A TRO

Federal Rule of Civil Procedure 65(b)(1)(A) permits a temporary restraining order "only if" "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Accordingly, while the power to grant a TRO is within the Court's discretion, such relief should only be granted "upon a clear showing that the plaintiff is entitled to such relief"; a preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008).

The Ninth Circuit has held that "very few circumstances justifying the issuance of an *ex parte* TRO," neither of which are present here: (1) "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing," or (2) notice to the defendant would render fruitless the further prosecution of the action." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). As to the first circumstance, the identity of the adverse party and its counsel is known to Coastal, and Frankford will make itself available for a preliminary injunction hearing. And as to the second circumstance, the issue presented in this case – whether Frankford's BOMB trademark is valid and enforceable – does not implicate the type of interests that might justify a TRO in other trademark cases, such as counterfeit cases where the alleged counterfeiter is alleged to have a history of disposing of evidence once on notice of a preliminary injunction hearing. *Id.*, citing *In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979). Coastal has not

- 4 -

DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPROARY RESTRAINING ORDER: CASE NO.: 8:21-CV-01548-DOC-KES

4850-0195-1228.2

made so much as a conclusory statement that either circumstance is applicable here. *See Esquire Props. Trading, Inc. v. Starmax Enters., Inc.*, Civ. No. 14-cv-9379, 2014 WL 12479298, at *11 (C.D. Cal. Dec. 8, 2014) (denying TRO where plaintiff's counsel's declaration offered no specific information regarding defendants' likelihood of disregarding a court order or of spoliating evidence). For these reasons alone, the Court should deny the application for temporary restraints ordering Frankford to withdraw its trademark infringement complaints to Amazon.

Furthermore, Coastal's application seeks to change the status quo, not to preserve it. Coastal is seeking a Court order, both in the form of "temporary restraints" and a preliminary injunction, that would order Frankford to take mandatory affirmative action with respect to Amazon.com. "A mandatory injunction 'goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored. When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Webspectator Corp. v. Parreira*, Civ. No. 17-3921-PA, 2017 WL 2468774, at *3 (C.D. Cal. June 7, 2017) (citing *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)). Coastal cannot meet that standard here.

Coastal's request for an *ex parte* TRO is nonsensical. The proposed order would have Frankford "notify Amazon that it is withdrawing any trademark complaints or other intellectual property rights notices or takedown notices involving or identifying Amazon listings for Coastal's hot chocolate bomb products" and "request that Amazon restore Coastal's product listings" <u>within five days of the Court entering the order</u>. (D.I. 15-24.) But TROs expire at the time after entry set by the court, not to exceed 14 days, and so Coastal's proposed order would put the Court, Frankford, and Amazon in the position of there being a strong probability that the request to Amazon could be reversed once the merits are considered and heard on an order to show cause for preliminary injunction. Clearly, if Coastal can wait the five days it proposed in the Proposed Order for the

- 5 -

DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPROARY RESTRAINING ORDER: CASE NO.: 8:21-CV-01548-DOC-KES

4850-0195-1228.2

relief to take effect (plus the three weeks it took before filing this application), it can wait a little longer for the Court to consider the whole picture by holding a hearing.

Nonetheless, because the test for issuing a TRO is the same as for a preliminary injunction, *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), Frankford offers its initial assessment of the four factors governing issuance of preliminary injunctive relief, without prejudice to its ability to further expound upon its position in response to an order to show cause.

### a. Likelihood of Success on the Merits

Under the Lanham Act, a "registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service. The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used." 15 U.S.C. § 1064(3). Genericness is a question of fact, and because Frankford's BOMB trademark is the subject of a federal registration, the mark is presumed valid and Coastal bears the burden of proving by a preponderance of the evidence that the primary significance of Frankford's trademark BOMB to the relevant public is a generic name for hot chocolate beverage mix or candy. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927-28 (9th Cir. 2005); *see also Elliott v. Google, Inc.*, 860 F.3d 1151, 1159 (9th Cir. 2017) ("A party applying for cancellation of a registered trademark bears the burden of providing genericide by a preponderance of the evidence.").

For purposes of considering Coastal's *ex parte* application for a TRO, the Court should recognize the presumption of validity of the mark and that substantially more evidence of the primary significance of the term "bomb" will

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
PHILADELPHIA

- 6 -

DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPROARY RESTRAINING ORDER: CASE NO.: 8:21-CV-01548-DOC-KES

4850-0195-1228.2

need to be proffered by Coastal in order to meet its burden of demonstrating genericness. The declarations offered by Coastal by its CEO, Boaz Shonfeld; its Executive Vice President responsible for online marketing, Aleks Reljic; and its outside counsel, "are of little weight" and carry the appearance of bias. 2 MCCARTHY ON TRADEMARKS §12:13 (5th ed. 2021). In addition, Coastal's proffered evidence does not define the relevant public. Frankford does not use the term "bomb" generically or descriptively, it uses it as a trademark for its product, set off from the terms "hot chocolate" on the packaging in large and prominent font. (*See* Lesser Decl., Ex. I.)

On the other hand, "dictionary definitions are relevant and sometimes persuasive in determining public usage." 2 MCCARTHY ON TRADEMARKS §12:13; *see Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153 (7th Cir. 1996) ("Because generic use implies use consistent with common understanding, we have often looked to dictionaries as a source of evidence on genericness."); *see also Surgicenters of Am., Inc. v. Med. Dental Surgeries Co.*, 601 F.2d 1011, 1020 (9th Cir. 1979) (affirming district court's finding mark to be generic through dictionary definitions and substantial evidence of its generic use by the consuming public). Dictionary evidence of the term "bomb" here shows that the term has not become so associated with the parties' hollow melting chocolate balls that there is any hint of "bomb" having a primary significance to the relevant public of the parties' goods. (*See* Lesser Decl., Ex. J, Merriam-Webster.com definition of "bomb"; Ex. K, Dictionary.com definition of "bomb.") This dictionary evidence shows that the term "bomb" is arbitrary for a hollow melting chocolate ball, not generic.

### b. Lack of Irreparable Harm

A mere "possibility" of irreparable injury is not sufficient to support a TRO or preliminary injunction; a plaintiff must demonstrate "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original).

      Coastal has not presented a claim of irreparable harm that requires remedy by a TRO and injunction. By its own admission, Amazon is just one outlet by which Coastal sells its BOMBOMB hollow chocolate balls. (*See* Shonfeld Decl. ¶ 9 ("Coastal's products, including its BOMBOMBS hot chocolate bombs, are sold at both brick-and-mortar retail stores like Costco and online through platforms like Amazon.com."). Coastal remains able to utilize other outlets and markets to sell its products.

      Lost sales on Amazon are the very type of economic harm that is not considered "irreparable." *Terry v. Register Tapes Unlimited, Inc.*, Civ. No. 2:16-cv-806, 2020 WL 3819417 (E.D. Cal. July 8, 2020) (citing *Los Angeles Mem. Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)). Coastal will not be put out of business if Frankford's trademark infringement complaint, based on Frankford's federal trademark registration for the BOMB mark, subsists with Amazon while this case is pending. *Cf. Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, Civ. No. 2:21-cv-2843, 2021 WL 2493288, at *9-10 (C.D. Cal. June 10, 2021) (applying Federal Circuit law in patent infringement dispute, finding irreparable harm from delisting of Plaintiff's products on Amazon because "Plaintiff sells its products almost exclusively on Amazon" and being delisted due to infringement notice "will likely again result in deactivation of Plaintiff's seller account" and "effectively put Plaintiff out of business"). Coastal has offered no specifics as to the percentage of its business that its BOMBOMB product line constitutes or the percentage of BOMBOMB sales that occur on Amazon as opposed to brick and mortar stores or other online outlets. Absent such specifics, the Court should find that lost sales on Amazon, assuming *arguendo* that Coastal succeeds on the merits of the third and fourth causes of action pleaded in its complaint and Frankford is found liable for damages, are quantifiable and can be remedied by a monetary award, such that no mandatory injunction should issue *pendente lite*.

### c. Balance of Hardships

Coastal seeks a mandatory injunction requiring Frankford to withdraw its trademark infringement complaint to Amazon. If the Court were to grant that application, Frankford will be damaged by the continuing infringement of its BOMB trademark by Coastal's products. If this case progresses, Frankford will be in the position of potentially asserting a trademark infringement claim against Coastal and seeking its own preliminary injunction. The balance of hardships does not favor Coastal.

### d. The Public Interest

The public interest is furthered by allowing legitimate rightsholders to issue trademark infringement notices to online e-commerce sales platforms, to avoid consumer confusion and allow consumers to make informed purchasing decisions. *See Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 991 (9th Cir. 2009). The public is further served by courts not inserting themselves into e-commerce platforms' administration of their own policies regarding intellectual property rights enforcement at a premature stage.

### IV. CONCLUSION

For the foregoing reasons, Frankford respectfully requests that the Court deny the application for a TRO and set a briefing schedule and hearing date for an order to show cause why a preliminary injunction should not issue in due course, or, in the alternative, deny Coastal's application for a show cause order.

Dated:  September 24, 2021          Respectfully submitted,

BAKER & HOSTETLER LLP

By:  */s/ Meghan Rohling Kelly*
     Meghan Rohling Kelly

Attorneys for Defendant
FRANKFORD CANDY, LLC

- 9 -

DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPROARY RESTRAINING ORDER: CASE NO.: 8:21-CV-01548-DOC-KES

4850-0195-1228.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
PHILADELPHIA